UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IN RE BIOGEN '755 PATENT LITIGATION | ) ) ) ) ) ) | Hon. Peter G. Sheridan<br><br>Civil Action No. 10-2734 (PGS-ES)<br>(consolidated) |

**PLAINTIFF BIOGEN'S MEMORANDUM IN SUPPORT OF ITS OPPOSITION TO DEFENDANT ARES TRADING S.A.'S MOTION TO COMPEL ARBITRATION**

OF COUNSEL:
Nicholas Groombridge
Elizabeth Stotland Weiswasser
Peter Sandel
Josephine Young
Caroline Simons
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Tel: (212) 310-8000
Fax: (212) 310-8007

Kevin H. Marino
John D. Tortorella
MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928-1488
Tel: (973) 824-9300
Fax: (973) 824-8425

*Attorneys for Plaintiff Biogen Idec MA Inc.*

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................ 1

II. STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY ........................ 2

III. ARGUMENT ........................................................................................................ 4

    A. Standard of Review ...................................................................................... 4

    B. The Court, Not An Arbitrator, Must Determine Whether A Contract Was Formed ........................................................................................................ 5

        **1.** Biogen's Claim Alleges No Contract Was Formed .................................. 5

        **2.** If No Contract Was Ever Formed, As Biogen Alleges, There Can Be No Arbitration ................................................................................ 8

        **3.** The Law On Which Ares Relies Uniformly Shows That The Court Adjudicates Issues of Contract Formation .............................................. 11

    C. Biogen's Claim Falls Squarely Within The Class Of Disputes That Must Be Resolved By This Court ............................................................................... 12

IV. CONCLUSION ..................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Am. Handkerchief Corp. v. Frannat Realty Co.*,
    109 A.2d 793 (N.J. 1955) ................................................................................................. 7

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986)................................................................................................... 5, 8

*Battaglia v. McKendry*,
    233 F.3d 720 (3d Cir. 2000) ....................................................................................... 12

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)............................................................................................. passim

*California Natural, Inc. v. Nestle Holdings, Inc.*,
    631 F.Supp. 465 (D.N.J. 1986) .................................................................................... 6

*Campbell v. General Dynamics Govt. Sys. Corp.*,
    321 F. Supp. 2d 142 (D. Mass. 2004) .......................................................................... 6

*City of Haverhill v. George Brox, Inc.*,
    716 N.E. 2d 138 (Mass. App. Ct. 1999) ...................................................................... 6

*Composition Roofers Local 4 Pension Fund v. Best Roofing of New Jersey, Inc.*,
    No. 09-5358, 2009 WL 5033945 (D.N.J. Dec. 14, 2009)....................................... 9, 10

*Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*,
    No. 07-5122, 2009 WL 349147 (D.N.J. Feb. 11, 2009) .............................................. 9

*Eisenberger v. Chesapeake Appalachia, LLC*,
    No. 3:09-CV-1415, 2010 WL 457139 (M.D. Pa. Feb. 4. 2010) ................................ 11

*Granite Rock Co. v. Teamsters*,
    130 S. Ct. 2847 (2010)........................................................................................ 5, 8, 9

*Hall v. AT&T Mobility LLC*,
    608 F. Supp. 2d 592 (D.N.J. 2009) .............................................................................. 4

*Kaneff v. Delaware Title Loans, Inc.*,
    587 F.3d 616 (3d Cir. 2009) ........................................................................................ 4

*Malek v. Verizon Commc'ns, Inc.*,
    No. Civ.A. 02-30164-MAP, 2004 WL 180251 (D. Mass. 2004) ................................ 7

*McNutt v. Estate of McNutt*,
    No. 09-4428, 2010 WL 2676390 (3d Cir. July 7, 2010)............................................. 6

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*,
  636 F.2d 51 (3d Cir. 1980) ............................................................................... 4, 8, 9, 13

*Pearl v. Merchants-Warren Nat. Bank of Salem*,
  9 Mass. App. Ct. 853 (1980) .................................................................................... 7

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
  388 U.S. 395 (1967) ..................................................................................... 8, 11, 12

*Quirk v. Data Terminal Sys., Inc.*,
  379 Mass. 762 (Mass. 1980) .................................................................................. 11

*Rent-a-Center West, Inc. v. Jackson*,
  130 S. Ct. 2772 (2010) ........................................................................................... 12

*Sandvik AB v. Advent Int'l Corp.*,
  220 F.3d 99 (3d Cir. 2000) ............................................................................. passim

*Slawsby v. Cifrino*,
  No. 031515BLS, 2003 WL 21527602 (Mass. Super. June 13, 2003) ....................... 7

*Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*,
  263 F.3d 26 (2d Cir. 2001) .................................................................................... 13

**Statutes**

Federal Arbitration Act,
  9 U.S.C. § 4 (1954) ............................................................................................ 8, 11

Mass. Gen. Laws ch. 150C, § 2(a)(1) (1959) .............................................................. 11

**Rules**

Fed. R. Civ. P. 56(c) ...................................................................................................... 4

**Journals & Treatises**

Restatement (Second) of Contracts § 17 (1979) ........................................................... 7

Richard E. Lord, *Williston on Contracts*, § 1.20 (4th ed. 1990) ................................... 7

iii

I.     **PRELIMINARY STATEMENT**

Biogen Idec MA Inc. ("Biogen") respectfully submits this memorandum of law in opposition to Defendant Ares Trading S.A.'s ("Ares") Motion to Compel Arbitration and To Stay Litigation (the "Motion"). Relying on an arbitration provision contained in a document dated October 12, 2000 and styled "Nonsuit and Option Agreement" (the "Nonsuit/Option Document")[1], Ares contends in its Motion that the declaratory judgment count in Biogen's First Amended Complaint (No. 10-2760, D.I. 61) is not properly before this Court and belongs instead in arbitration because Biogen's claim "challenges the validity of the Agreement generally[.]" Motion at 9. Ares is mistaken. A contract cannot form absent consideration because consideration is a fundamental and indispensable component of a contract. Biogen's declaratory judgment claim is premised fundamentally on its claim that the Nonsuit/Option Document is not supported by consideration and was thus never formed as a contract in the first instance and is void.[2] Biogen thus seeks a declaratory judgment that the Nonsuit/Option Document is not a binding contract that ever formed between the parties. *See* First Amended Complaint ¶ 20 (alleging the purported Nonsuit/Option Document is "not a valid and enforceable agreement and is void").

---

[1] The Nonsuit/Option Document is attached as Exhibit 1 to the Declaration of Ricardo Solano Jr. in Support of Ares' Motion to Compel Arbitration.

[2] For purposes of this memorandum of law, Biogen uses the traditional term "void" to refer to a contract that was never formed between the parties, in contrast to an "invalid" contract, which is a formed contract that is otherwise unenforceable under common law. *See, e.g., Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99 (3d Cir. 2000) (addressing whether a contract was void as having never been executed); *Composition Roofers Local 4 Pension Fund v. Best Roofing of New Jersey, Inc.*, No. 09-5358 (SRC), 2009 WL 5033945, at *2 (D.N.J. Dec. 14, 2009) (Chesler, J.) (holding that *Sandvik* is still good law after *Buckeye* because Supreme Court specifically acknowledged it); *Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*, No. 07-5122 (HAA), 2009 WL 349147, at *4 (D.N.J. Feb. 11, 2009) (Ackerman, J.) (discussing definition of "void" contracts since *Buckeye* and concluding that *Sandvik* still mandated courts to inquire "whether the parties completed a contract, void or not, containing an arbitration agreement").

1

The Supreme Court, the Third Circuit, and this Court have repeatedly held that the question of contract formation is an issue that a court, not an arbitration panel, must consider and resolve. Thus, where, as here, a party to an alleged agreement seeks a determination that the purported agreement never came into being, the claim must be adjudicated by the Court. Ares' Motion entirely ignores this authority and is premised on an erroneous assumption (contradicted by the face of Biogen's pleading) that Biogen's declaratory judgment claim is based solely on challenges to the validity of the Nonsuit/Option Document. To the contrary: Biogen's claim for relief fits squarely within the class of disputes that are unequivocally within the province of the Court, not an arbitration panel. Ares' Motion must therefore be denied.

## II.   STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

This suit arises from Biogen's claim that various entities are infringing its patent rights, specifically U.S. Patent No. 7,588,755 ("the '755 Patent") directed, among other things, to therapeutic methods involving recombinant beta-interferon, as embodied in Biogen's Avonex® product, a drug highly effective in the treatment and management of patients suffering from multiple sclerosis. The invention claimed in Biogen's '755 Patent was invented by scientist Walter Fiers and the '755 Patent issued on September 7, 2009. Biogen brought suit for patent infringement on May 28, 2010, against four companies that it believes are infringing its patent rights through their making and selling of recombinant beta interferon products for the treatment of multiple sclerosis in competition with Avonex®: EMD Serono, Inc. ("Serono"), Pfizer, Bayer Healthcare and Novartis. *See* No. 10-02760, D.I. 1.

Defendant Serono answered Biogen's Complaint on July 26, 2010, including in its Answer several affirmative defenses and counterclaims asserting that the '755 patent is invalid, unenforceable and not infringed. No. 10-02760, D.I. 56. In a conversation between counsel for Serono and counsel for Biogen on or about July 30, 2010, Serono's counsel informed

Biogen's counsel that Serono intended to try to invalidate the '755 Patent, but, if it did not succeed, to enforce the terms of the Nonsuit/Option Document as an irrevocable option to take a license under the '755 Patent. No. 10-02760, D.I. 56 ¶ 22. Ares and Serono are affiliates, as both are wholly-owned subsidiaries of Merck KGaA ("Merck"), and Serono thus believes it is entitled to enjoy the benefit of rights allegedly belonging to Ares under the Nonsuit/Option Document, and to hold such rights in indefinite abeyance pending the results of its efforts to invalidate the '755 Patent in this action. *Id.*

Upon learning of Serono's position that it is permitted to simultaneously challenge the validity of the '755 patent and at the same time enjoy an irrevocable option to take a license under the patent, Biogen realized there was a fundamental dispute between the parties (Biogen and Ares) as to whether they had ever formed an agreement by way of the Nonsuit/Option Document, and that the dispute was ripe for resolution by this Court. Accordingly, on August 16, 2010, Biogen filed its First Amended Complaint to add Ares (the purported signatory on the Nonsuit/Option Document) and Merck (the parent of both Ares and Serono) as defendants, and to include a declaratory judgment claim (the Sixth Count for Relief) seeking a declaratory judgment that the Nonsuit/Option Document "is not a valid and enforceable agreement and is void." No. 10-02760, D.I. 61 ¶¶ 20, 85. The basis for Biogen's declaratory judgment claim is that Ares and/or Serono "have provided no consideration to Biogen in exchange for Biogen's purported promises and relinquishment of valuable rights." *Id.* ¶ 20.[3]

---

[3] On or about September 23, 2010, Biogen dismissed without prejudice this action as against Merck, No. 10-02760, D.I. 85, and in exchange Ares accepted service of the First Amended Complaint and agreed not to contest personal jurisdiction in this action. *See* No. 10-2734, D.I. 55.

On October 8, 2010, Ares simultaneously filed its Answer to the First Amended Complaint and filed its motion to compel arbitration on Biogen's declaratory judgment claim. No. 10-02734, D.I. 39, 42. Biogen files this memorandum of law in support of its opposition to Ares' Motion. Biogen's Sixth Count for Relief is properly before this Court because it seeks an adjudication that no contract was ever formed between Ares and Biogen under the terms of the Nonsuit/Option Document.

## III. ARGUMENT

### A. Standard of Review

A motion to compel arbitration is reviewed under the summary judgment standard of Federal Rules of Civil Procedure 56(c). *Kaneff v. Delaware Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009); *see also Hall v. AT&T Mobility LLC*, 608 F. Supp. 2d 592, 595 (D.N.J. 2009) ("Motions to compel arbitration are reviewed under the summary judgment standard of Fed. R. Civ. P. 56(c)[.]"). "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (3d Cir. 1980). The Third Circuit explained that Fed. R. Civ. P. 56(c) was the appropriate standard because "the district court's order to arbitrate is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Id.* at 54 n.9. "The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Id.* at 54; *accord Kaneff*, 587 F.3d at 620.

4

### B. The Court, Not An Arbitrator, Must Determine Whether A Contract Was Formed

"[I]t is well-settled that where the dispute at issue concerns contract formation, that is generally for courts to decide." *Granite Rock Co. v. Teamsters*, 130 S. Ct. 2847, 2855-56 (2010). This is because "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 105 (3d Cir. 2000) (affirming denial of motion to compel because the formation of the underlying contract was challenged) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). While Ares is correct on the law that general challenges to the validity of a contract are arbitrable, Motion at 6, Ares goes on to ignore the dispositive distinction the Supreme Court and the Third Circuit draw between challenges to the ***validity*** of a contract generally, and challenges to the ***formation*** of the contract. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded."); *Sandvik*, 220 F.3d at 105 ("This distinction is an important one, for though arbitration clauses are severable from their larger contracts, the question whether the underlying contract contains a valid arbitration clause still precedes all others[.]") Because Biogen's declaratory judgment claim is one of contract formation, not merely contract validity, it falls squarely within the class of disputes that must be resolved by the Court, and the Court in the first instance is tasked with determining whether an agreement—and therefore an agreement to arbitrate—was ever formed. Ares' Motion utterly fails to acknowledge this controlling authority, and therefore it should be denied.

#### 1. Biogen's Claim Alleges No Contract Was Formed

Biogen's claim for declaratory relief is fundamentally premised on Biogen's claim that Ares and Biogen never formed a contract. Biogen pleads that no consideration was

5

promised in exchange for Biogen's "relinquishment of valuable rights" and that the Nonsuit/Option Document is therefore not an agreement between the parties. First Amended Complaint ¶¶ 9, 20, 85. Ares does not dispute that Biogen raises this claim, conceding that "Biogen seeks a declaratory judgment that the Agreement is not valid or enforceable because, according to Biogen, '[Ares] and/or its affiliates, including EMD Serono . . . purport to have no obligations to Biogen and to have provided no consideration to Biogen in exchange for Biogen's purported promises and relinquishment of valuable rights." Motion at 3-4, quoting First Amended Complaint ¶ 20. Because it is axiomatic that consideration is an essential element in the formation of a contract, and that without consideration a contract can never form between the parties, it is clear that Biogen's declaratory judgment claim is primarily based on a challenge to the formation of the purported contract between Biogen and Ares. As discussed below (p. 15), Biogen alleges in the alternative breach, revocation and/or termination of the purported contract. *See* First Amended Complaint ¶¶ 9, 21, 85-87. Biogen does not dispute that if the Court concludes that a contract was formed the Court could order the alternative claims to arbitration.

"[A] valid contract requires offer, acceptance, and consideration." *Campbell v. General Dynamics Govt. Sys. Corp.*, 321 F. Supp. 2d 142, 148 n.3 (D. Mass. 2004) (applying Massachusetts law), aff'd, 407 F.3d 546 (1st Cir. 2005); *see also City of Haverhill v. George Brox, Inc.*, 716 N.E. 2d 138 (Mass. App. Ct. 1999) ("[T]he components of a valid contract [are] offer, acceptance, consideration, and terms setting forth the rights and obligations of the parties."); *McNutt v. Estate of McNutt*, No. 09-4428, 2010 WL 2676390, at *2 (3d Cir. July 7, 2010) (applying New Jersey law) ("To establish that a valid contract existed, a claimant must show that an offer, acceptance, and consideration existed[.]"); *California Natural, Inc. v. Nestle Holdings, Inc.*, 631 F.Supp. 465 (D.N.J. 1986) ("'[T]he formation of a contract requires a bargain

in which there is a manifestation of mutual assent to the exchange and a consideration.'") (quoting Restatement (Second) of Contracts § 17 (1979), at 51); *see also Malek v. Verizon Commc'ns, Inc.*, No. Civ.A. 02-30164-MAP, 2004 WL 180251, at *3 n.3 (D. Mass. 2004) ("New Hampshire, like Massachusetts, follows traditional contract law principles:  Offer, acceptance and consideration are essential to contract formation.") (internal quotations omitted); Richard E. Lord, *Williston on Contracts*, § 1.20 (4th ed. 1990) ("A promise for breach of which the law neither gives a remedy nor otherwise recognizes a duty of performance by the promisor is often called a void contract . . . such a promise is not a contract at all.").[4]  Without consideration, a purported contract—including a purported option contract—is merely an offer, and does not create a binding agreement between the parties.  *See Am. Handkerchief Corp. v. Frannat Realty Co.*, 109 A.2d 793, 17-18 (N.J. 1955) (finding that purported option contract was merely an offer because of no consideration despite recitation of "good and valuable consideration" in the document); *Slawsby v. Cifrino*, No. 031515BLS, 2003 WL 21527602, *9 (Mass. Super. June 13, 2003) ("'An option given without consideration . . . is revocable at any time by the offeror.'") (quoting *Pearl v. Merchants-Warren Nat. Bank of Salem*, 9 Mass. App. Ct. 853, 854 (1980).

    Therefore, it is indisputable that Biogen's claim challenges the existence of an agreement between Ares and Biogen based on the absence of consideration.  First Amended

---

[4]  Ares asserts that Massachusetts law should apply because "[t]he Agreement contains a choice-of-law provision, providing that "[t]he form, execution, validity, construction and effect of this Agreement shall be determined in accordance with the laws of the Commonwealth of Massachusetts and of the United States of America, regardless of the choice of law principles of those or any other jurisdiction." Motion  at 3.  This alleged choice-of-law provision, however, is not governing here because it, like all the other alleged provisions of the Nonsuit/Option Document, is part of a void contract, for the reasons discussed.  Notwithstanding the governing law, and as outlined above, the law is uniform across jurisdictions, including in New Jersey and Massachusetts, that consideration is fundamental to formation of a contract.

Complaint at ¶¶ 9, 20, 85.  Indeed, Ares concedes as much, and does nothing in its Motion to challenge Biogen's claim.  *See* Motion at 3-4, 9.

### 2.     If No Contract Was Ever Formed, As Biogen Alleges, There Can Be No Arbitration

A party cannot be required to arbitrate if it did not agree to do so.  *See Par-Knit Mills*, 636 F.2d at 54 ("Arbitration is a matter of contract between the parties and a judicial mandate to arbitrate must be predicated upon an agreement to that effect.").  The FAA makes this clear, mandating that a court must first be "satisfied that the making of the agreement for arbitration . . . is not in issue" before granting a motion to compel arbitration.  9 U.S.C. § 4 (1954); *see also Par-Knit Mills*, 636 F.2d at 54 ("[T]he party who is contesting the making of the agreement has the right to have the issue presented to a jury.").  The reason for this statutory rule is plain:  "Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *AT&T Techs.*, 475 U.S. at 648.

The Supreme Court has therefore distinguished between challenges to the validity of a contract (where the parties do not disagree that an agreement was formed but differ instead as to whether it remains valid) and claims that no contract was ever formed in the first instance, holding that the former are arbitrable but that the latter are not.  *Compare Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) *with Granite Rock*, 130 S. Ct. at 2855-56 and *Buckeye*, 546 U.S. at 444 n.1.  It is clear that challenges to the validity of a contract generally— such as defenses of illegality, unconsionability, duress, and fraud in the execution—are arbitrable because an arbitration provision that is otherwise independently enforceable may be severed from the purportedly invalid contract.  *Prima Paint*, 388 U.S. at 403-04.  However, it is equally clear from controlling caselaw that challenges to the existence of the underlying contract containing an arbitration clause are properly heard by a court because a party cannot be forced to

8

arbitrate if it never concluded an agreement to do so. *See, e.g., Buckeye*, 546 U.S. at 444 n.1; *Granite Rock*, 130 S. Ct. at 2855-56; *see also Sandvik*, 220 F.3d at 107 ("[A] court must decide whether an agreement to arbitrate exists before it may order arbitration . . . we draw a distinction between contracts that are asserted to be 'void' or non-existent . . . and those that are merely 'voidable,' as was the contract at issue in *Prima Paint*."); *Par-Knit Mills*, 636 F.2d at 54 (holding that the district court had to first ascertain whether there was an underlying contract and therefore an agreement to arbitrate). The Court in *Buckeye* plainly articulated this critical — and dispositive — distinction: "The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded." *Buckeye*, 546 U.S. at 444 n.1. And just this past Term, the Supreme Court reconfirmed this key distinction from *Buckeye*, holding that "it is . . . well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock*, 130 S. Ct. at 2855-56 (citing *Buckeye*, 546 U.S. at 444 n.1). Importantly, in making this distinction, the *Buckeye* Court relied on the Third Circuit's decision in *Sandvik AB v. Advent Intern. Corp.*, 220 F.3d 99 (3d Cir. 2000), which held that "there may be no arbitration if the agreement to arbitrate is nonexistent." *Sandvik*, 220 F.3d at 101 (cited in *Buckeye*, 546 U.S. at 444 n.1).

The Supreme Court and the Third Circuit thus have consistently embraced this dispositive distinction and denied motions to compel arbitration where, as here, the challenge is to the formation of the agreement in the first instance. *See Sandvik*, 220 F.3d at 112; *Par-Knit Mills*, 636 F.2d at 54. This Court has likewise embraced this distinction. *See Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds*, No. 07-5122 (HAA), 2009 WL 349147, at *4 (D.N.J. Feb. 11, 2009) (Ackerman, J.) ("Courts may still inquire whether the parties completed a contract, void or not, containing an arbitration agreement."); *Composition Roofers Local 4*

9

*Pension Fund v. Best Roofing of New Jersey, Inc.*, No. 09-5358 (SRC), 2009 WL 5033945, at *2 (D.N.J. Dec. 14, 2009) (Chesler, J.) (distinguishing disputes over the validity of a contract from "disputes over whether any agreement was ever concluded, which is an issue for the courts to decide, not the arbitrator"). Despite its central importance to these proceedings, Ares fails to address this line of authority in any fashion in its Motion.

This Court has expressly applied the above controlling authority to deny motions to compel arbitration. Its recent decision in *Composition Roofers*, 2009 WL 5033945, at *1, is squarely on point. In *Composition Roofers*, cross-movant Best argued that arbitration was inappropriate because the contract at issue never came into existence based on the fact that Best was never a signatory; Composition Roofers countered that arbitration was appropriate because Best was "challeng[ing] the validity of the contract as a whole." *Id.* at *2. As in the instant case, both parties cited to *Buckeye*, 546 U.S. at 440, to support their respective positions. *Id.* Agreeing with Best, this Court found that that Composition Roofers had "overlooked the significance of [footnote 1] in qualifying the holding of *Buckeye*" and that "[t]his case clearly falls within the exception carved out in the footnote." *Id.* at *2-3. As set forth above, footnote 1 of *Buckeye* cites with approval to *Sandvik*, which held that "there may be no arbitration if the agreement to arbitrate is nonexistent." *Sandvik*, 220 F.3d at 101 (cited in *Buckeye*, 546 U.S. at 444 n.1). Because this Court found that the issue of whether Best was a signatory to the agreement went to the underlying agreement's formation and existence, it held that "the instant dispute is not resolved by the holding of *Buckeye*, but, rather, by the holding of *Sandvik*," that is, "issues about the arbitration agreement's existence . . . are threshold issues for the Court to decide." *Id.* at *2. This Court thus found that "the arbitrator lacked jurisdiction to hear the dispute," granting Best's motion to vacate the arbitration award. *Id.*

10

Similarly, other districts in the Third Circuit have recognized that it is the courts' role to adjudicate challenges to the existence or formation of the underlying contract post-*Buckeye*. *See Eisenberger v. Chesapeake Appalachia, LLC*, No. 3:09-CV-1415, 2010 WL 457139, at *4 (M.D. Pa. Feb. 4. 2010) (relying on footnote 1 of *Buckeye* to deny motion to compel arbitration because lease at issue was merely a revocable offer and not a contract). The Court can and respectfully should deny Ares' Motion based on this clear and controlling authority.

### 3. The Law On Which Ares Relies Uniformly Shows That The Court Adjudicates Issues of Contract Formation

Ares seeks support in *Prima Paint* and *Buckeye*, Motion at 6-7, but both of those cases are consistent with the *Buckeye* distinction and thus mandate denial of Ares' Motion. *See Prima Paint*, 388 U.S. at 403-04 (holding that courts should determine "issues relating to the making and performance of the agreement to arbitrate"); *Buckeye*, 546 U.S. at 444 n.1 (holding that a claim of contract illegality was arbitrable but declining to extend holding to contract formation). Ares ignores this key aspect of the very authority it cites.

Ares also relies on the FAA and the Massachusetts General Laws for support, but to no avail. Motion at 6-7. The FAA, as discussed, is clear that in order to proceed, "[t]he court" must be "satisfied that the making of the agreement for arbitration . . . is not in issue[.]" 9 U.S.C. § 4 (1954). Similarly, Massachusetts law states that "[t]he court shall order arbitration ***unless . . . the opposing party denies the existence of the agreement to arbitrate***." Mass. Gen. Laws ch. 150C, § 2(a)(1) (1959) (emphasis added). Ares' reliance on *Quirk v. Data Terminal Sys., Inc.*, 379 Mass. 762, 766 (Mass. 1980), is also misplaced because it merely follows the reasoning in *Prima Paint*, as discussed above. *See Sandvik*, 220 F.3d at 105 ("[*Prima Paint*] did not grapple with what is to be done when a party contends not that the underlying contract is merely

11

voidable, but rather that no contract ever existed.").[5]  Ares' own arguments and citations to authority, therefore, not only fail to support its Motion, but indeed compel its denial.

### C. Biogen's Claim Falls Squarely Within The Class Of Disputes That Must Be Resolved By This Court

Biogen's primary claim, as described above, and which Ares concedes, is that no contract was formed in the first instance.  As the above discussion makes clear, this claim is for this Court to resolve and is thus the basis on which Biogen is opposing Ares' motion to compel arbitration.  Biogen does not dispute that *if* this Court were to find that Biogen and Ares in fact formed a contract in the Nonsuit/Option Document, that Biogen's claims of breach, revocation and/or termination of such contract could be ordered to arbitration.  But that is not the issue for the Court to decide here.  Biogen raises its alternative claims in the Amended Complaint in order to preserve all of its defenses.  Biogen's primary claim is that there was no contract formed between the parties and this is an issue that the Court, rather than an arbitrator, must decide. First Amended Complaint ¶¶ 9, 21, 85-87.

Ares' arguments in its Motion underscore the very reasons why Biogen's declaratory judgment claim must be resolved by this Court.  As Ares implicitly concedes, the "mandatory arbitration provision" relies on the existence of "[t]he very Nonsuit and Option Agreement" which "contains" it.  Motion at 1.  Similarly, Ares' argument that Biogen is seeking

---

[5] To the extent that Ares relies on *Battaglia v. McKendry*, 233 F.3d 720 (3d Cir. 2000) to argue that the scope of the arbitration clause in the Nonsuit/Option Document reaches issues of contract formation, that reliance is misplaced.  Motion at 9.  In *Battaglia*, the party moving to compel arbitration sought an interpretation of the arbitration clause to include the issue of whether the contract was procured by duress, a contract challenge akin to challenges based on unconscionability, illegality, or fraud in the inducement, but distinct from the claim made here: that there was never an exchange of consideration and therefore no contract was ever formed. 233 F.3d at 724-25, 727; *see also Rent-a-Center West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010) (unconscionability); *Buckeye*, 546 U.S. at 440 (illegality), *Prima Paint*, 388 U.S. at 395 (fraud in the inducement).

12

to "end-run its contractual promise to arbitrate" simply begs the controlling question: was there a "contractual promise to arbitrate" in the first place? That question—which is what Biogen's claim is directed to—is for the courts, as shown above. *See, e.g., Sandvik*, 220 F.3d at 108 ("[T]he validity of such an agreement [to arbitrate] cannot arise out of a broader contract if no broader contract ever existed."); *Par-Knit Mills*, 636 F.2d at 53 ("Par-Knit's duty to arbitrate, if any, rests upon a determination as to whether or not the documents in issue were intended by Par-Knit to be contracts.").

In stating that "Biogen . . . does not challenge the validity of the arbitration provision itself[,]" Motion at 8, Ares misapprehends the implications of Biogen's challenge. Biogen maintains that it never entered into a binding agreement with Ares because the document that purports to embody such an agreement is not supported by consideration. Here, as in *Sandvik*, Biogen contends that there is no "independent source of the validity of the arbitration clause once the underlying contract is taken off the table." *Sandvik*, 220 F.3d at 108. The law is clear that in these circumstances a motion to compel arbitration must be denied. *See id.* at 99 (affirming order denying motion to compel arbitration when existence of underlying contract was challenged); *see also Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26 (2d Cir. 2001) (reversing order of arbitration as to one of six contracts because appellant had sufficient evidence to warrant trial on whether contract was void due to no agency). Accordingly, neither the arbitration provision nor any other term contained in that document is enforceable. Ares' Motion should be denied, and Biogen's declaratory judgment claim permitted to proceed in this forum.

## IV. CONCLUSION

Biogen respectfully requests that this Court deny Ares' Motion in its entirety and allow Biogen's declaratory judgment claim for relief to proceed before this Court.

**MARINO, TORTORELLA & BOYLE, P.C.**

Dated: November 1, 2010

*/s/ Marino*

Kevin H. Marino
kmarino@khmarino.com
John Tortorella
jtortorella@khmarino.com
437 Southern Boulevard
Chatham, New Jersey 07928-1488
Phone:     (973) 824-9300
Facsimile: (973) 824-8425

*Attorneys for Plaintiff Biogen Idec MA Inc.*

OF COUNSEL:
Nicholas Groombridge
Elizabeth Stotland Weiswasser
Peter Sandel
Josephine Young
Caroline Simons
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007