```
1                      UNITED STATES DISTRICT COURT
                          DISTRICT OF NEW JERSEY
2
   _____
                           : Case No. 2:10-cv-02734-CCC-JAD
3  BAYER HEALTHCARE          :
   PHARMACEUTICALS, INC.,    :
                             :
4           Plaintiff,       :
                             :
5      vs.                   : Newark, New Jersey
                             : Thursday, January 10, 2013
   BIOGEN IDEC, INC.,        : 10:10 a.m.
6                            :
            Defendant.       :
   _____
7                    TRANSCRIPT OF STATUS CONFERENCE
                BEFORE THE HONORABLE JOSEPH A. DICKSON
8                  UNITED STATES MAGISTRATE JUDGE

9  APPEARANCES:

10 For the Plaintiff:          Greenbaum, Rowe, Smith & Davis, LLP
                               By:  ROBERT M. GOODMAN, ESQ.
11                             75 Livingston Avenue, Suite 301
                               Roseland, NJ  07068-3701
12
                               Williams & Connolly, LLP
13                             By:  DAVID I. BERL, ESQ.
                                    BRUCE R. GENDERSON, ESQ.
14                             725 Twelfth Street, N.W.
                               Washington, DC  20005
15

16 For the Defendant:          Marino, Tortorella & Boyle, PC
                               By:  KEVIN H. MARINO, ESQUIRE
17                             437 Southern Boulevard
                               Chatham, NJ 07928-1488
18
                               Paul, Weiss, Rifkind, Wharton
19                             & Garrison, LLP
                               By:  NICHOLAS P. GROOMBRIDGE, ESQ.
20                             1285 Avenue of the Americas
                               New York, NY  10019-6064
21

22 Transcription Company:      KLJ Transcription Service, LLC
                               P.O. Box 8627
23                             Saddle Brook, NJ  07663
                               (201)703-1670 - Fax (201)703-5623
24

25 Proceedings recorded by electronic sound recording, transcript
   produced by transcription service.
```

```
 1   APPEARANCES (Cont.):

 2   For EMD Serono & Pfizer:      Gibson, Dunn & Crutcher, LLP
                                   By:  WAYNE BARSKY, ESQ.
 3                                      TIMOTHY P. BEST, ESQ.
                                   2029 Century Park East
 4                                 Los Angeles, CA  90067-3026

 5   For Novartis:                 Gibbons, PC
                                   By:  SHEILA F. McSHANE, ESQ.
 6                                 One Gateway Center
                                   Newark, NJ  07102-5310
 7
                                   White & Case, LLP
 8                                 By:  LESLIE MORIOKA, ESQ.
                                   1155 Avenue of the Americas
 9                                 New York, NY  10036-2787

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

3

1                        I N D E X

2

3    RE REQUEST TO FILE SUMMARY JUDGMENT

4    MOTION PRIOR TO CLOSE OF DISCOVERY:                    PAGE

5    Ruling. . . . . . . . . . . . . . . . . . . . . . . 4

6

7    RE SETTLEMENT NEGOTIATIONS:                            PAGE

8    Colloquy. . . . . . . . . . . . . . . . . . . . . . 5

9

10   RE FACT & EXPERT DISCOVERY DEADLINES:                  PAGE

11   Colloquy. . . . . . . . . . . . . . . . . . . . . . 9

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy / Ruling                                    4

1          (Conference commenced at 10:10 a.m.)

2               THE COURT:  All right.  This is Bayer versus Biogen,

3    or the In re Biogen Patent Litigation, Docket Number 10-2734.

4    We're here for a status conference.

5               Can we have appearances, please?

6               MR. MARINO:  For Biogen, Your Honor, Kevin Marino,

7    Marino, Tortorella and Boyle.  And with me at counsel table,

8    our lead counsel, Nicholas Groombridge of Paul Weiss.

9               THE COURT:  Okay.

10              MR. GOODMAN:  For Bayer, Bob Goodman from Greenbaum,

11   Rowe, Smith and Davis, with David Berl and Bruce Genderson

12   from Williams and Connolly.

13              THE COURT:  Okay.

14              MS. McSHANE:  Sheila McShane of the Gibbons firm.

15   With me are Wayne Barsky and Timothy Best of the Gibson Dunn

16   firm on behalf of EMD Serono and Pfizer.  And on behalf of

17   Novartis; myself, as well as Leslie Morioca from the White and

18   Case firm.

19              THE COURT:  Okay.  All right.  The first thing that

20   we have to talk about -- and it's going to be a short

21   discussion -- is I did -- Judge Cecchi and I have received I

22   guess three letters over the last few days seeking permission

23   to file a partial summary judgment motion prior to the close

24   of expert discovery.  Judge Cecchi sent word over late last

25   night the answer is no.  Okay?

1          So, I read the letters.  I understand the issues now.

2   But, when I read the letters again this morning, color me

3   optimistic, but do these arguments in any way allow us to

4   start to talk about settlement?

5          MR. GROOMBRIDGE:  Your Honor, on behalf of the

6   plaintiffs, our view is no.  I mean, our view, quite frankly,

7   is that this issue boils down to the problem that Serono,

8   which is one of the defense groups, has an option --

9          THE COURT:  Right.

10         MR. GROOMBRIDGE:  -- to take a license.

11         THE COURT:  Right.

12         MR. GROOMBRIDGE:  They can either exercise that

13  option going forward or not.  Right?  But they can't have it

14  both ways by saying I want to take a swing at your patent and,

15  if I lose, then I'll exercise my option.

16         And the practical effect of that, Your Honor, is that

17  the run rate at which they are racking up liability before

18  they exercise is enormously affected by this.  So, if they

19  exercise the option, they're paying three percent.  But, in

20  our view of the world, if -- as long as they don't exercise

21  the option, they're probably paying something like 85 percent.

22         And so the issue is that there is a huge disparity

23  between the -- our view of the world, in terms of what their

24  exposure is, and their view of the world.  And, you know, all

25  I can say, I think, Your Honor, is that on the Biogen side,

1    throughout the pendency of this lawsuit and, frankly, from the

2    day the patent issued -- now a little over three years ago --

3    we're surprised that they didn't exercise the option.  We're

4    kind of, you know, why are we here?  Right?  Why would a

5    rational businessperson do this?

6              But the point is that they have now accumulated a

7    very substantial exposure under our lost profits theory that

8    runs literally into the billions of dollars.  And so, the

9    problem with settlement is you -- you know, it -- the am -- it

10   very -- the amount of money that they would have to put on the

11   table, in view of that exposure, is something that is, I

12   suspect, not what they're going to be interested in doing.

13             So, we have a kind of --

14             THE COURT:  That's from your perspective.

15             MR. GROOMBRIDGE:  Yes.

16             THE COURT:  But that's the same issue that mediators

17   and -- confront all the time.  Because they're going to turn

18   around and say, first of all, you're wrong on the

19   retroactivity or on the -- on applying the agreement; and,

20   second of all, your patent is invalid.

21             MR. GROOMBRIDGE:  Well, that -- and, Your Honor, let

22   -- just let me be clear.  Biogen would be very happy to

23   mediate this issue.

24             THE COURT:  Mm-hmm.

25             MR. GROOMBRIDGE:  You know, we are quite confident in

Colloquy                                              7

1    our position.  So, to the extent -- I mean, I may have

2    misunderstood Your Honor's question.  If the question is, is

3    there some value in sending this off to a supervised --

4              THE COURT:  That's my question.

5              MR. GROOMBRIDGE:  Our answer is, we'd be totally

6    happy to engage in that, because the prospect -- the

7    alternative is probably at least another year-and-a-half

8    before we get to trial.  And, you know, absolutely we'd love

9    to do that.

10             MR. BARSKY:  Your Honor, on behalf of EMD Serono and

11   Pfizer; Wayne Barksy, Gibson Dunn.  Good morning.

12             THE COURT:  Good morning.

13             MR. BARSKY:  We're always willing to have reasonable

14   business discussions.  We have tried it in the past; it hasn't

15   worked.

16             THE COURT:  Mm-hmm.

17             MR. BARSKY:  We have a very long contractual

18   relationship with Biogen.  That was the subject of the

19   arbitration --

20             THE COURT:  Right.

21             MR. BARSKY:  -- in this matter a year ago.  And,

22   actually, the issue that Mr. Groombridge just suggested --

23   namely, this notion that we could not somehow challenge the

24   patent and then later take the -- or exercise the option to

25   take the license -- is exactly the issue that was arbitrated,

1   because Biogen took the position we could not do so, and they

2   lost on that issue in the unanimous and opinion of the

3   arbitral panel.  So, that issue has already been decided.

4           But to the Court's question regarding whether the

5   existence of this issue perhaps opens a door.  Well, I think

6   the Court just heard -- and I do have to agree -- that the

7   parties are very far apart.  And hearing the plaintiffs say

8   that this is an issue where they think they have a claim for

9   billions of dollars of exposure is something that is going to

10  make it very difficult to have any reasonable discussion.

11          And so, at this point, we are always willing to speak

12  to our contractual partner, but I think we just heard from

13  Biogen that the likelihood is not high that those discussions

14  would be fruitful.

15          And I understand the Court's ruling on the issue of

16  the filing of the motion, and not -- I didn't hear any

17  daylight there, so I won't try to explore it, but I do have a

18  question for the Court.  And that is, can we assume that we

19  can file that motion at the close of discovery or would the

20  Court prefer that we wait until a later time?

21          THE COURT:  Well, I haven't spoken directly to Judge

22  Cecchi about that.

23          You have?

24          THE CLERK:  (Indiscernible)

25          THE COURT:  Okay.  All right.  Well, it appears that

Colloquy                                         9

1   you're going to be able to file it at the close of expert

2   discovery.

3        MR. BARSKY:  At the close of expert discovery.

4        THE COURT:  But it is Judge Cecchi's practice to

5   explore -- maybe with a little bit more vigor that I am

6   exploring it today -- the possibility of settlement.  And, in

7   fact, it's -- she's not unknown for actually ordering the

8   parties to go to mediation prior to dispositive motions.  So,

9   I'm not saying that she's going to do that; I'm saying you

10  should prepare for that type of process.

11       And that's why -- one of the reasons I'm thinking, if

12  -- are we -- we are definitely finished with fact discovery in

13  about two weeks; correct?  Or no?

14       MR. BARSKY:  It looks like there is an agreement.

15  I'll defer to Mr. Berl and Mr. Groombridge, but -- but it

16  looks like there is an agreement to push out discovery by just

17  another six weeks, with the Court's agreement, so that we can

18  finish the 20 or so days of deposition that perhaps are left.

19       THE COURT:  When I -- I -- yeah.  Of course, we'll --

20  we can deal with that.  But, at the end of the fact discovery

21  -- and I -- and I'm not -- I don't mean to be totally naive

22  about what you both just told me, but I think that it is

23  something that Judge Cecchi is going to want to explore

24  anyway.

25       So then, I guess my followup question is, from your

1   perspective, would it be better to explore it after expert

2   discovery or now, after fact discovery?

3          MR. BARSKY:  I think it would be helpful, Your Honor,

4   in my view, to explore it at a time when the issues are all

5   briefed for the Court.  Because, as we indicated in our

6   correspondence, we do believe it's a straightforward

7   application of existing law, with no underlying contested

8   facts.  And we understand that Biogen disagrees with that and

9   they think a different --

10         THE COURT:  Mm-hmm.

11         MR. BARSKY:  -- set of rules applies, and that's what

12  courts decide.

13         Perhaps, when those issues are framed, and on paper

14  and before the Court, that will be a good time to have -- at

15  least for our clients' purposes -- to have that discussion.

16         MR. GROOMBRIDGE:  Your Honor, I think the way we

17  would look at that is to say that discussion is likely to be

18  more fruitful after the parties have gone through expert

19  discovery, because they will have created damages' expert

20  reports and have a sense of the strengths and weaknesses of

21  one another's positions.  And so, while we're certainly

22  interested in having a dialogue, we think it's going to -- my

23  fear is that, if we did it today, it would just be two ships

24  passing in the night, you know, and pretty it would be --

25         THE COURT:  You're both in agreement, and I --

1            MR. GROOMBRIDGE:  -- what we're hearing now.

2            THE COURT:  -- and I got it.

3            MR. GROOMBRIDGE:  Right.  Right.  Yeah.  Mm-hmm.

4            THE COURT:  I got it.

5            Okay.  So then, let's do this.  Six weeks is what

6    you're looking for, for fact discovery?

7            MR. BERL:  Yes, Your Honor.

8            THE COURT:  Which is?  Help the mathematically-

9    challenged.

10           MR. BERL:  We have said March 15th is what we --

11           THE COURT:  March 15th?

12           MR. BERL:  -- have agreed to.

13           And the other issue -- Your Honor, this is David Berl

14   for Bayer -- what has prolonged fact discovery to some extent

15   has been difficulty in scheduling depositions and getting them

16   on the calendar.  So, we would request, and the parties have

17   all agreed to include perhaps in the order that, within the

18   next two weeks, all depositions would be calendared and a date

19   will be provided for them, so that we can assure that we'll

20   meet the March 15th deadline and not need to come back to the

21   Court.

22           MR. GROOMBRIDGE:  Your Honor, if -- I have one

23   footnote perhaps to that.  That one of the witnesses that they

24   wish depose is a gentleman named Walter Gilbert, a Nobel Prize

25   winner, whose time is rather difficult to get.  And so, I

1    think we have an agreement that he would be outside this

2    ruling.  I don't know that the Court needs to put anything

3    about that in an order, as long as we get it on the record

4    here.

5              THE COURT:  Okay.  And in terms of what -- I'm sorry,

6    sir; your name?  You.

7              MR. BARSKY:  Wayne Barsky.

8              THE COURT:  You're Bar --

9              MR. BARSKY:  From Gibson Dunn.

10             THE COURT:  Yeah, yeah.  Thank --

11             MR. BARSKY:  Thank you.

12             THE COURT:  In terms of what you were saying, I don't

13   disagree with you that sometimes it's easier or it makes it

14   more educated to begin.  I'm just going to give you a heads up

15   on that issue.  You guys practice all over the country.  We

16   have a six-month calendar here; a motion calendar.  What Judge

17   Cecchi will not want to do is go beyond that six months for

18   the motions.

19             So, what I'm -- where I'm going with this, is perhaps

20   we finish fact discovery, we begin expert discovery.  Maybe we

21   get together sometime in the middle of that if we need to,

22   just to talk about how things are going.  And then, at the end

23   of expert discovery, we discuss a briefing schedule.  We used

24   to have an Appendix N, I think it was, here in New Jersey in

25   our local rules that allow the parties to brief everything,

1  exchange it, and then file it at a date -- usually it was

2  picked by the rule, but we could do that.  And maybe even that

3  -- you can serve those papers to the mediator, as well, --

4          MR. BARSKY:  Sure.

5          THE COURT:  -- if I assume that you will want an

6  outside mediator.

7          MR. BARSKY:  Sure.

8          THE COURT:  But that's something -- but let's

9  remember to talk about that.

10          MR. BARSKY:  Certainly, Your Honor.  And just by way

11  of context?  Under the current schedule, meaning before even

12  an order is entered today, --

13          THE COURT:  Mm-hmm.

14          MR. BARSKY:  -- the earliest time at which expert

15  discovery would commence -- I believe this is right -- is

16  sometime in May.  If, by discovery, we mean the taking of

17  depositions of experts, as opposed to exchange of expert

18  reports.

19          THE COURT:  When did -- what are the dates for the --

20  what are our current dates for exchanging of expert reports?

21          MR. GROOMBRIDGE:  Your Honor, sir, the -- the current

22  schedule is that expert -- initial round of expert reports

23  would begin either the later of 60 days after the close of

24  fact discovery or 60 days after the entry of a Markman order.

25          THE COURT:  Did you get the Markman order yet?

1          MR. GROOMBRIDGE:  We did not, Your Honor.  And with

2     the utmost diplomacy, one of the things that we have hoped we

3     might elicit would be perhaps when -- when might be reasonable

4     to -- to expect that.

5          THE COURT:  I will try to use that same diplomacy

6     myself and figure -- and see if we can -- if we can find out.

7          MR. GROOMBRIDGE:  The -- so, it's 60 days after

8     Markman or close of fact discovery, and then it -- there's a

9     staged exchange of reports, and then depositions.  It adds up

10    to a total of about seven months for the whole process.  Which

11    is --

12         THE COURT:  Do we still need that much time?

13         MR. GROOMBRIDGE:  The dialogue -- and in fairness to

14    my colleagues here, this issue has come up a number of times.

15    Biogen's view is that it would prefer to condense it.  I

16    believe the defendants are of the view that they do need that

17    time.

18         THE COURT:  All right.  Well, I guess we leave that

19    in place for now, and then maybe we should speak again in late

20    March or early April?

21         MR. BARSKY:  Certainly, Your Honor.

22         THE COURT:  And --

23         MR. BARSKY:  Would it be helpful to the Court for

24    counsel to confer after today and propose alternate dates for

25    the Court to speak with us?

1                THE COURT:  Sure.

2                MR. BARSKY:  All right.

3                THE COURT:  Because I'm going to be fairly free or my

4     calendar is probably not totally booked for early year.

5                MR. BARSKY:  Okay.  We'll do that, Your Honor.

6                THE COURT:  I'm just trying to think.  I guess

7     there's nothing else to do about this right now.

8                Were there any other issues?

9                MR. GROOMBRIDGE:  No other issues from Biogen, Your

10    Honor.  I -- the -- we have a pretty cooperative relationship.

11    I think we're, I think, confident that we can work out what

12    remaining issues there are with fact discovery.  So, our

13    expectation is that, come March 15th, we'll be all done,

14    without any intervention by the Court.

15                MR. BERL:  Same with Bayer, Your Honor.

16                THE COURT:  Okay.  It's a pleasure to see people get

17    along when they're -- one side wants a billion dollars from

18    the other.

19                But, all right.  Thank you very much.

20                MR. BARSKY:  Thank you, Your Honor.

21                MR. GROOMBRIDGE:  Thank you, Your Honor.

22                MR. BERL:  Thank you, Your Honor.

23                MR. BARSKY:  Appreciate the time.

24                THE COURT:  You'll -- somebody will call us with a

25    date?  Or a couple of dates.  Give me about two dates, if you

                                    Colloquy                              16

1    can, so I can pick.

2            MR. BERL:  We shall do so.

3            THE COURT:  Okay.

4            MR. BERL:  It would be most convenient to call the

5    deputy clerk or to send a letter?

6            THE COURT:  The law clerk.

7            MR. BERL:  The law clerk.  I shall do so.

8            THE COURT:  Christina Martinez.

9            MR. BERL:  Thank you very much, Ms. Martinez.

10           THE COURT:  Okay.

11           MR. BERL:  Thanks, Your Honor.

12           THE COURT:  Yeah.

13           MR. BERL:  Thank you, Your Honor.

14           MS. McSHANE:  Would Your Honor like a proposed order?

15   You want to -- can work it that way?

16           THE COURT:  On the -- you want it on the fact

17   discovery?

18           MS. McSHANE:  For the close of fact discovery and --

19           THE COURT:  Sure.

20           MS. McSHANE:  -- you know, the terms there.  Okay.

21           THE COURT:  Sure.  Thank you.

22           MS. McSHANE:  We'll get that to you.

23           THE COURT:  Okay.  Thank you very much.

24           MR. BARSKY:  Thank you, Your Honor.

25               (Conference adjourned at 10:26 a.m.)

1                C E R T I F I C A T I O N

2          I, TERRY L. DeMARCO, court-approved transcriber,

3    certify that the foregoing is a correct transcript from the

4    electronic sound recording of the proceedings in the above-

5    entitled matter from 10:10:29 a.m. to 10:26:14 a.m.

6

7    _____01/14/13_____              *S / Terry L. DeMarco*_____
              Date                     Terry L. DeMarco, AD/T 566
8                                      KLJ Transcription Service

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25